**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION FOR HABEAS RELIEF** |
| | ) | |
| vs. | ) | Case No. 4:15-cr-159 |
| | ) | |
| Christopher Hunt, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| Christopher Hunt, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Case No. 1:17-cv-104 |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |

_____

Before the Court is Defendant Christopher Hunt's Motion to Vacate under 28 U.S.C. § 2255 filed on May 22, 2017. See Docket No. 51. The Government filed a response in opposition to the motion on August 10, 2017. See Docket No. 62. Hunt filed a reply on October 2, 2017. See Docket No. 65. For the reasons outlined below, the motion is denied.

I.      **BACKGROUND**

On October 7, 2015, Hunt was charged with one count of receipt of materials involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count One) and one count of possession of materials involving the sexual exploitation of minors in violation of 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2) (Count Two). See Docket No. 1. On January 15, 2016, a written plea agreement was filed. See Docket No. 30. The terms of the plea agreement called for

Hunt to plead guilty to Count Two of the indictment, possession of materials involving the sexual exploitation of minors. In the plea agreement, the Government agreed to dismiss Count One and recommend a sentence within the applicable Sentencing Guideline range. Count Two carried a maximum sentence of 120-months while Count One carried a maximum sentence of 240-months. The parties anticipated a total offense level of 28.

The Presentence Investigation Report ("PSR") was filed on May 6, 2016. See Docket No. 37. The PSR found a total offense level of 28. See Docket No. 37, ¶ 26. The PSR revealed Hunt had no criminal history and thus he was placed in criminal history category I. See Docket No. 37, ¶ 31. An offense level of 28 combined with a criminal history category I results in an advisory Sentencing Guideline range of 78-97 months.

On May 17, 2016, a combined change of plea and sentencing hearing was held at which time Hunt pled guilty to Count Two. See Docket No. 58, p. 23. The Government called one witness during the sentencing phase of the hearing, Hunt's sister J.A. See Docket No. 58, p. 26. Counsel for Hunt objected to her testimony because the Government did not give any advance notice to the defense that J.A. would be testifying. J.A. testified that Hunt had sexually abused her when she was a young child and he was in his early teens. See Docket No. 58, p. 26-33. Defense counsel cross-examined J.A. At the time of the hearing, Hunt was approximately 48 years old and J.A. was approximately 38 years old. During allocution, the Court asked Hunt if he wanted to apologize to J.A. See Docket No. 58, p. 50. Hunt apologized but maintained the abuse was not as severe as his sister had described. See Docket No. 58, pp. 50-56.

The Government recommended a sentence of 85-months. See Docket No. 58, p. 37. Defense counsel asked for a sentence of 36-months. See Docket No. 58, p. 38. The Court accepted the PSR

without change, found an adjusted offense level of 28, criminal history category I, an advisory Sentencing Guideline range of 78-97 months, and sentenced Hunt to 96-months imprisonment. See Docket No. 58, pp. 57-58. No appeal was taken.

On May 22, 2017, Hunt filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. See Docket No. 51. In his motion, Hunt raises seven claims for relief. All the claims relate to the testimony of J.A. at sentencing. Most of the claims are based on alleged ineffective assistance of counsel although there is also reference to a due process violation and Fifth Amendment self-incrimination violation. Hunt does not wish to withdraw his guilty plea. Rather, he asks to be resentenced by a different judge and given a 36-month sentence.


II.     **STANDARD OF REVIEW**

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)). This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal, and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A 28 U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.

## III.    LEGAL DISCUSSION

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must satisfy the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, a defendant must establish that defense counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. This requires showing that counsel made errors so serious that defense counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Id. at 687-88. In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. If the underlying claim (i.e., the alleged deficient performance) would have been rejected, defense counsel's performance is not deficient. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Courts seek to "eliminate the distorting effects of hindsight" by examining defense counsel's performance from counsel's perspective at the time of the alleged error. Id.

Second, it must be demonstrated that defense counsel's performance prejudiced the defense. Strickland, 466 U.S. at 687. In other words, under this second prong, it must be proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). In a guilty plea context, a defendant must establish a reasonable probability that he would not have pled guilty and would have exercised his right to a trial but for counsel's ineffectiveness. Hill v. Lockart, 474 U.S. 52, 59 (1985). Merely showing a conceivable effect is not enough. Id. An increased prison term may constitute prejudice under the *Strickland* standard. Glover v. United States, 531 U.S. 198, 203 (2001).

There is a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996). A court reviewing defense counsel's performance must make every effort to eliminate hindsight and second-guessing. Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996). Under the *Strickland* standard, strategic decisions that are made after a thorough investigation of both the law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.

### 1.    CLAIM ONE

In his first claim, Hunt contends he received ineffective assistance of counsel and a due process violation occurred when the Government called J.A. as a witness during sentencing. Specifically, Hunt contends he was not given prior notice that the Government would call her and the Government never produced a statement she allegedly made shortly after he was arrested. Hunt claims these errors rendered his counsel ineffective. The first contention is based on a misapprehension of the law and the second is based on a misapprehension of the facts.

First, the Government is under no legal obligation to identify the witnesses it is going to produce at a sentencing hearing. See United States v. Boyce, 564 F.3d 911, 918 (8th Cir. 2009) ("The mere identity of witnesses is not exculpatory and is not covered by Brady."); United States v. West, 15 F.3d 119, 121 (8th Cir. 1994). J.A.'s interest in the case was revealed to Hunt and his attorney[1] at Hunt's detention hearing on October 13, 2015. See Docket No. 54, pp. 9-12. Clearly, J.A. was not

---

[1]It should be noted that two different attorneys from the Federal Public Defender's Office represented Hunt in this case. The first attorney represented Hunt at the detention hearing and in the early stages of the case up through December 18, 2015, at which point a second attorney took over the case. See Docket No. 26.

a surprise witness. In addition, defense counsel cross-examined J.A. and Hunt made his own assertions about the veracity of her claims during his allocution.

Second, J.A. made a statement to law enforcement in the form of a voice message left on an answering machine that was never produced as requested in violation of Jencks v. United States, 353 U.S. 657 (1957) and 18 U.S.C. § 3500. However, Hunt is mistaken as the transcript of the detention hearing makes clear, J.A. left a voice message with her name and phone number and requested a call back. See Docket No. 54, p. 10. A law enforcement official called her back, spoke with her, and repeated her assertions of sexual abuse from Hunt at the detention hearing. J.A. lives in Virginia, her work for the Department of Defense takes her overseas, and thus communication was difficult. No written report or statement was ever made of the conversation. See Docket No. 54, pp. 11-12. Thus, there was nothing to produce and no *Jencks* violation.

### 2.     CLAIM TWO

In his second claim, Hunt contends his Fifth Amendment due process rights were violated when the Government told the Court at sentencing that, had it been aware of J.A.'s allegations earlier, it may have sought harsher terms in the plea agreement. See Docket No. 58, p. 36. Hunt contends the statement misled the Court as the Government was aware of J.A at the detention hearing held on October 13, 2015. The Government responds that its knowledge of J.A.'s alleged abuse was fairly generic and stemmed only from the telephone conversation between J.A. and Special Agent Jessie Smith of the North Dakota Bureau of Criminal Investigation. The Government did not know the full extent of the abuse she would testify to until she actually testified. This was because she was a somewhat reticent witness, she lived out of state, and was deployed overseas for a period of time

while the case was pending. Because the Government's statement does not appear to be disingenuous in any way, the Court finds no due process violation occurred. The statement Hunt objects to accurately reflects the charging practices of the U.S. Attorney's Office and the Court was not misled by it. In addition, Hunt was not prejudiced as the Government complied with the plea agreement by making a sentencing recommendation within the agreed upon range.

### 3.    **CLAIM THREE**

For his third claim for relief, Hunt contends defense counsel was ineffective in failing to request a continuance or recess to prepare for the cross-examination of J.A. The Government contends cross-examination is a matter of strategy, and defense counsel's strategic judgments must be given wide latitude.

Defense counsel's strategic decisions "made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," even if that strategic decision proves unwise. Strickland, 466 U.S. at 690. Whether in hindsight a court agrees with a defense attorney's strategy is of no consequence as the deferential presumption required by *Strickland* must be applied. Rodela-Aguilar v. United States, 596 F.3d 457, 464 (8th Cir. 2010). To establish prejudice in the sentencing context, a defendant must show a reasonable probability that, but for counsel's errors, the sentence the defendant received would have been different. Jeffries v. United States, 721 F.3d 1008, 1014 (8th Cir. 2013). Cross-examination techniques, like other matters of trial strategy, are generally entrusted to the professional discretion of counsel. See United States v. Orr, 636 F.3d 944, 952 (8th Cir. 2011).

Hunt fails to explain what advantage could have been gained by delay or what additional questions might have been posed or what additional useful testimony would have been elicited. There were no written reports to review. Hunt does not suggest he himself had more information to share with defense counsel about his sister. The record reflects defense counsel became aware of J.A.'s potential testimony during the detention hearing and requested a witness report, although no such report existed. There was ample time to prepare for cross-examination of J.A. prior to sentencing and defense counsel did cross-examine her at sentencing, albeit briefly, after objecting to the Government's decision to call her as a witness. This cross-examination was not particularly helpful to Hunt's cause, and it is understandable that defense counsel ceased questioning J.A. Based upon the Court's review of the record, the Court finds defense counsel's handling of the cross-examination of J.A. was reasonable strategy and is thus virtually unchallengeable. As for prejudice, Hunt offers nothing but speculation and conclusions without any evidence or specifics. The Court finds Hunt has failed to establish any prejudice relating to defense counsel's cross-examination of J.A.

### 4.  CLAIM FOUR

In his fourth claim for relief, Hunt contends defense counsel was ineffective in failing to object to J.A's testimony which Hunt describes as untruthful. Hunt acknowledges that defense counsel objected to J.A. being allowed to testify at all; an objection that was overruled.

Hunt offers no legal authority to support his contention that additional objections were warranted or evidence to support his assertion that J.A.'s testimony was untruthful. Defense counsel cross-examined J.A., and she remained consistent with her version of events. Having once objected to her testimony generally, there would have been little point in objecting to every statement J.A.

made.  There is nothing unusual about a court receiving testimony at a sentencing hearing where the history and characteristics of the defendant's life are relevant to crafting an appropriate sentence.  See 18 U.S.C. § 3553(a).  Hunt has failed to demonstrate that defense counsel's lack of repeated objections was unreasonable or that he was prejudiced.

## 5.    CLAIM FIVE

In his fifth claim for relief, Hunt contends defense counsel was ineffective in failing to investigate the allegations made by J.A. which counsel was aware of since the detention hearing on October 13, 2015.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Strickland, 466 U.S. at 691.  In order to satisfy the prejudice requirement in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Lockhart, 474 U.S. at 59.

Hunt does not contend the lack of investigation caused him to plead guilty when he might otherwise have insisted on going to trial.  Furthermore, Hunt has failed to demonstrate what additional investigation would have revealed and how that might have affected his sentence.  For instance, Hunt has not provided the Court with the name of any witness who may have been called to contradict J.A.'s testimony.  Nor has he provided an affidavit from any such witness.  Nor is there evidence in the record that Hunt provided defense counsel with information or reason to investigate J.A.'s

9

assertions of abuse.  See Strickland, 466 U.S. at 691 (whether investigative decisions are reasonable depends on critical information provided to defense counsel by the defendant).  Hunt's brief contains nothing more than unattributed speculation.  More than simple speculation as to what testimony a witness might have given is required to show prejudice and undermine confidence in the outcome of the proceeding.  See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989)  As Hunt's contention is wholly unsupported, it necessarily fails.

### 6.    CLAIM SIX

In his sixth claim for relief, Hunt contends his Fifth Amendment right against self-incrimination was violated when the Court directly questioned him during the sentencing hearing. Specifically, Hunt contends he did not know how to assert his right to remain silent.  The Court's only question was whether Hunt wanted to apologize to his sister.  See Docket No. 58, p. 50.

It is well-established that the privilege against self-incrimination "is an exception to the general principle that the Government has the right to everyone's testimony."  Salinas v. Texas, 570 U.S. 178, 183 (2013) (quoting Garner v. United States, 424 U.S. 648, 658 n. 11 (1976)).  "To prevent the privilege from shielding information not properly within its scope, we have long held that a witness who 'desires the protection of the privilege . . . must claim it' at the time he relies on it." Salinas,  570 U.S. at 183 (quoting Minnesota v. Murphy, 465 U.S. 420, 427 (1984)).  The critical question to ask is whether, under the circumstances of a particular case, a witness was deprived of the ability to voluntarily invoke the privilege.  Salinas, 570 U.S. at 186.

Hunt failed to invoke his privilege against self-incrimination and cannot now, with the benefit of hindsight, do so.  It would have been a simple matter for Hunt to refuse to answer the Court's

question. If he had any questions during the hearing as to how to invoke the privilege, he should have asked his attorney for advice. There is nothing unusual about a judge asking a defendant questions at a sentencing hearing, and Hunt admits his attorney told him the Court would speak to him directly. Because Hunt failed to invoke the privilege, no Fifth Amendment violation occurred.

### 7. CLAIM SEVEN

For his seventh claim for relief, Hunt contends counsel was ineffective in advising him not to mention familial problems during the Presentence Investigation Report interview. Hunt speculates that if he had brought up the issue with his sister, the U.S. Probation Office would have investigated and "shed light on the truth of the whole matter." See Docket No. 51, p. 27. Such decisions are a matter of strategy which are virtually unchallengeable. Strickland, 466 U.S. at 690; Orr, 636 F.3d at 952. In this case, it was certainly reasonable strategy for defense counsel to advise his client not to bring up conduct which would be prejudicial to his cause. In addition, speculation as to what an investigation would have revealed is insufficient to establish prejudice. Sanders, 875 F.2d at 210. Accordingly, the claim fails.

## IV. CONCLUSION

The Court has carefully reviewed the entire record, the parties' filings, and the relevant case law. While Hunt may be unhappy with his sentence, the sentence was within the applicable and undisputed Sentencing Guideline range, and the Court remains convinced it was reasonable. For the reasons set forth above, Hunt's motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 (Docket No. 51) is **DENIED**. The Court also issues the following **ORDER**:

11

1)      The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith.  <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

2)      Based upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  Therefore, a certificate of appealability will not be issued by this Court.  <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n. 4 (1983). If the defendant desires further review of his motion, he may request the issuance of a certificate of appealability by a circuit judge with the Eighth Circuit Court of Appeals.

**IT IS SO ORDERED.**

Dated this 26th day of April, 2018.

/s/ *Daniel L. Hovland*
Daniel L. Hovland, Chief Judge
United States District Court